IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

ROSETREE BOUTIQUE, INC.,

        Plaintiff,

v.                                                               CIVIL ACTION NO. 3:20-0705

ASSUREDPARTNERS CAPITAL, INC.,

        Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant AssuredPartner's Motion to Dismiss (ECF No. 9). For the reasons stated below, the Court **GRANTS** the Motion and **DISMISSES** the case.

## I. BACKGROUND

This suit arises from a dispute over Plaintiff's insurance coverage for damages it sustained while being ordered to close by West Virginia's COVID-19 related orders. According to the Complaint, Plaintiff is a women's fashion and accessory shop in West Virginia. Defendant AssuredPartners Capital, Inc. is Plaintiff's insurance broker and arranged for the insurance policy (40 SBA ZN4795SA) between Plaintiff, Sentinel Insurance Company, and Hartford Accident and Indemnity Company. The Policy provided coverage from December 2, 2019 to December 2, 2020. Among other things, the Policy covers "the actual loss of Business Income you sustain when your 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Law to property in the immediate area of your 'scheduled premises.'" Ex. 1 to Compl., ECF 1-1.

As stated in the Complaint, on January 30, 2020, the World Health Organization declared

COVID-19 a health emergency of international concern, and on March 16, 2020, Governor Jim Justice declared a state of emergency. Two days later, Plaintiff emailed AssuredPartners expressing its "understanding that [its] lost sales from this year would be reimbursed compared to the sales from the previous year . . . . " Ex. 4 to Compl., ECF No. 1-4. Defendant AssuredPartners sent Plaintiff's question to Hartford and then forwarded Hartford's response, which stated: "Currently, our Business Income for Civil Authority Actions will NOT respond to closures due to the corona virus [sic] . . . . Sickness is not a covered cause of loss, nor does it cause direct physical damage." *Id.*[1]

On March 19, 2020, Governor Justice confirmed the first case of COVID-19 in West Virginia, and on March 24, 2020, he ordered a general stay-at-home-order temporarily requiring all "non-essential" businesses to cease operations. Plaintiff complied with this order and remained closed from March 24 to May 4, 2020. Plaintiff suffered significant economic loses from this closure and sought insurance benefits to cover these losses. Sentinel and Hartford did not approve Plaintiff's claims.

On October 23, 2020, Plaintiff filed this suit against Hartford, Sentinel Insurance, and AssuredPartners. The parties stipulated to the dismissal of Hartford and Sentinel. ECF Nos. 5, 15. The only remaining Defendant is AssuredPartners, which has three causes of action against it: Bad Faith (Count III); Violation of the West Virginia Unfair Trade Practices Act (Count IV); Estoppel (Count V), and Breach of Fiduciary Duty (Count VI). AssuredPartners now moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).

---

[1] The Court notes that Plaintiff mischaracterized this email exchange in the body of the Complaint by implying that AssuredPartners, and not Hartford, decided that Plaintiff's policy did not cover business income losses due to coronavirus.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes courts to dismiss complaints that fail to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A motion to dismiss will be granted if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

## III. DISCUSSION

**Bad Faith (Count III) and Violation of the West Virginia Unfair Trade Practices Act (Count IV)**

According to the Complaint, AssuredPartners is liable under the tort of bad faith and the Unfair Trade Practices Act ("UTPA") because Defendant failed to provide accurate information about Plaintiff's coverage and failed to procure a policy which expressly covered business closures due to viruses like COVID-19.

Defendant argues that Plaintiff's claim is improper under *Hawkins v. Ford Motor Co.*, 211 W. Va. 487 (2002). In that case, the Supreme Court of Appeals of West Virginia held that "[t]he Unfair Trade Practices Act . . . and the tort of bad faith apply only to those persons or entities and their agents who are engaged in the business of insurance." *Syll. Pt. 2, Hawkins v. Ford Motor Co.*, 211 W.Va. 487, 566 S.E.2d 624 (2002). Although this holding suggests that an insurance broker may be held liable, the court's further explanation of this syllabus point indicates the opposite:

"absent a contractual obligation to pay a claim, no bad faith cause of action exists, either at common law or by statute." *Id.* at 628. The West Virginia Code defines "insurance" as "a contract whereby one undertakes to indemnify another or to pay a specified amount upon determinable contingencies." W. Va. Code § 33–1–1 (1957). Defendant argues that because no such contract existed between it and Plaintiff, the bad faith and UTPA claims are improper.

In response, Plaintiff argues that the UTPA applies because it states that "[n]o person shall engage in . . . an unfair method of competition or an unfair or deceptive act or practice in the business of insurance," and defines "person" as including "brokers." W. Va. Code § 33-11-3; W. Va. Code § 33-11-2(a). In effect, Plaintiff argues that the West Virginia Supreme Court's ruling in *Hawkins* does not extend to insurance brokers—despite the fact that brokers does not have a contractual relationship for insurance with plaintiffs—because the plain text of the UTPA extends liability over brokers.

Whether the *Hawkins* court intended to preclude claims against insurance brokers is uncertain. However, the Court need not resolve this question today because it finds that, even if AssuredPartners is "in the business of insurance," Plaintiff's Complaint does not provide sufficient allegations to support a bad faith or UTPA claim. Plaintiff alleges very few facts specific to AssuredPartners. According to the Complaint, Defendant "is the insurance broker who arranged for and delivered the insurance policy," forwarded a message from Hartford indicating that the policy did not cover COVID-19 closures or sickness, and later "represented three (3) different times that Rosetree Boutique would receive insurance proceeds from business loss resulting from the closure of its dress shop from COVID-19 precautions," but later stated that these representations were a "mistake." Compl. ¶¶ 9, 27, 39, 40.

None of these allegations rises to the level of unreasonable misconduct that is required to

establish bad faith or deception. Even assuming that Defendant made a "mistake," as Plaintiffs allege, neither the tort of bad faith nor the UTPA penalize a person for making a simple mistake in good faith. Plaintiffs do not allege facts showing that Defendant made this mistake with malice or otherwise intended to deceive Plaintiffs. Therefore, the Court must dismiss these claims.

Plaintiff's Response in Opposition attempts to advance another theory of liability. Specifically, Plaintiff argues that AssuredPartners acted in bad faith and deceptively by "induc[ing] Rosetree Boutique to purchase the insurance policy months before the COVID-19 pandemic arose, and its agent, Mr. Dickson, told [Plaintiff] that the policy would cover losses from a disaster requiring the government to shut down their business." ECF No. 16. However, there are no facts in the Complaint about this conversation. Instead, Plaintiff attempts to supplement the Complaint and relies on two affidavits filed in support of its Response. ECF Nos. 17-18. The Court cannot consider these affidavits because they were not incorporated into the Complaint. *See* Fed. R. Civ. P. 12(b)(6), (d); *see also CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir.2009). Therefore, the Court must exclude this evidence from its analysis and reject Plaintiff's argument. The Court **GRANTS** the Motion to Dismiss as to Counts III and IV.

**Estoppel (Count V)**

Plaintiff's Estoppel claim fails for similar reasons. According to the Complaint, Defendant "knew that the insurance policy it procured for Rosetree Boutique provided for loss of business due to the spread of COVID-19," and represented to Plaintiff "that the policy covered business loss as a result of the Order involving COVID-19 precautions." Compl. ¶¶ 72-73. Plaintiff claims to have relied on these representations to its detriment. However, Plaintiff does not allege how it relied on those representations or how that reliance was detrimental. These representations occurred months after Plaintiff accepted the Policy and do not appear to have affected Plaintiff's

request for payments from Hartford or Sentinel. Therefore, the Court also rejects this claim and **GRANTS** the Motion to Dismiss as to Counts V.

### Breach of Fiduciary Duty (Count VI)

Finally, the Complaint brings a claim for Breach of Fiduciary Duty against Defendant. Plaintiff claims that AssuredPartners "knew or reasonably should have known by the exercise of reasonable diligence that Plaintiff expected and/or sought insurance coverage for business loss and/or damage resulting from the spread of a virus, such as COVID-19." Compl. ¶ 79. Based on this knowledge, Plaintiff argues that AssuredPartners breached its duty "in failing to provide and/or precure insurance coverage" for damages related to "a virus, such as COVID-19." *Id.* at ¶ 80.

In 2016, the West Virginia Supreme Court noted the "absence of case law in West Virginia addressing the failure to procure insurance." *Aldridge v. Highland Ins. Co.*, No. 15-0658, 2016 WL 3369562, at *5 (W.Va. June 17, 2016); *see also Mine Temp, LLC v. Wells Fargo Ins. Servs. of W. Virginia, Inc.*, No. 18-0755, 2019 WL 5692296 (W. Va. Nov. 4, 2019). Although those cases were brought against insurance agents, Plaintiff has not identified any West Virginia authority establishing this cause of action against insurance brokers. Even so, in jurisdictions that recognize this cause of action, the plaintiff must show that "a request for desired coverage that was not procured." *Id.* (citing *Busey Truck Equip., Inc. v. Am. Family Mut. Ins. Co.*, 299 S.W.3d 735, 738 (Mo. Ct. App. 2009)). The Complaint does not contain any allegations that Plaintiff requested this coverage before Defendant procured the Policy. Thus, the Court must **GRANT** the Motion to Dismiss as to this claim.

### IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** the Motion to Dismiss (ECF No. 13) and

**DISMISSES** AssurredPartners from this action. Given that AssuredPartners was the only remaining defendant, the Court also **DISMISSES** the suit.

The Clerk is **DIRECTED** send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: March 22, 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE